2020 IL App (1st) 171362
No. 1-17-1362
Opinion filed May 26, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 97 CR 25837 |
| | ) | |
| OMAR ASHANTI JOHNSON, | ) | Honorable |
| | ) | Gregory Ginex, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Walker concurred in the judgment and opinion.
Justice Pierce dissented, with opinion.

**OPINION**

¶ 1     Omar Johnson and Israel Ruiz (whose separate appeal we also decide today, *People v. Ruiz*, 2020 IL App (1st) 163145) were convicted of violent murders they committed at the ages of 19 and 18, respectively. Both availed themselves of their constitutional right to a direct appeal and their statutory right to postconviction proceedings. Their cases come before us on appeal from the trial court's denial of leave to file a successive postconviction petition. Common to both petitions is a claim that a long line of cases expanding constitutional protections for sentencing juveniles—

commonly referred to by the flagship case *Miller v. Alabama*, 567 U.S. 460 (2012)—apply to them as young adults.

¶ 2    We hold, in both cases, that Johnson and Ruiz have made *prima facie* showings in their pleadings that evolving understandings of the brain psychology of adolescents require *Miller* to apply to them. Their petitions and their counsel on appeal urge that we account for the emerging consensus that the development of the young brain continues well beyond 18 years, the arbitrarily demarcated admittance to adulthood for those arrested and entering our criminal law system. Here, we reverse the trial court's denial of Johnson's request for leave to file his successive petition and remand for further postconviction proceedings during which he can develop his claim. We do the same in *People v. Ruiz*, 2020 IL App (1st) 163145.

¶ 3    At the outset, we make two critical points. Neither decision should be read to minimize or excuse the suffering wrought by the taking of another life. Indeed, *Miller* engages constitutional protections involving juveniles who commit the worst kinds of offenses. There, the defendants committed similarly violent murders—one defendant participated in the attempted robbery of a video store, during which the clerk was shot point blank with a sawed-off shotgun. The other defendant robbed a neighbor of $300 and repeatedly hit the victim with a baseball bat, saying, " 'I am God, I've come to take your life,' " before setting fire to the victim's trailer with the victim alive inside. *Miller*, 567 U.S. at 465-68.

¶ 4    Our decisions also should not be overread in terms of relief. Johnson, like Ruiz, involves an early stage in the successive postconviction process. We order the trial court to grant Johnson leave to file his petition so he can attempt to prove whether *Miller* applies to him, as he has sufficiently pled in his petition. If, and only if, he succeeds on that front does the trial court consider a new sentencing hearing.

¶ 5                                     Background

¶ 6      In 1999, Omar Johnson was convicted of several offenses related to the execution-style

murder of his boss, Dorothy Jewula. Johnson and an accomplice abducted Jewula, ordered her into

the trunk of her car, robbed her, and then shot her twice in the head. The trial court sentenced

Johnson, who was 19 at the time of the offense, to a discretionary life sentence for murder. The

court ordered concurrent 60-year sentences for aggravated kidnapping, armed robbery, and

aggravated vehicular hijacking. The court also imposed a concurrent 10-year sentence for

concealment of a homicidal death.

¶ 7      Since his conviction, Johnson has filed several challenges. We affirmed the trial court's

judgment on direct appeal. *People v. Johnson*, No. 1-99-1989 (2004) (unpublished order under

Illinois Supreme Court Rule 23). Johnson filed both a postconviction petition and section 2-1401

petition (see 735 ILCS 5/2-1401 (West 2014)), and we affirmed the dismissal of both. *People v.*

*Johnson*, No. 1-99-1989 (2006) (unpublished order under Illinois Supreme Court Rule 23); *People*

*v. Johnson*, No. 1-05-3285 (2006) (unpublished order under Illinois Supreme Court Rule 23).

Johnson filed a second section 2-1401 petition, and we affirmed the dismissal (*People v. Johnson*,

2012 IL App (1st) 111378), though we vacated the $50 state's attorney fee on the instruction of

our supreme court in *People v. Johnson*, 2013 IL 114639. Johnson then filed his first successive

postconviction petition—the trial court denied it, and we affirmed. *People v. Johnson*, 2015 IL

App (1st) 131079-U. Finally, Johnson filed two more section 2-1401 petitions, both of which were

dismissed in orders we affirmed. *People v. Johnson*, 2016 IL App (1st) 130697-U; *People v.*

*Johnson*, 2018 IL App (1st) 160604-U.

¶ 8      In 2016, Johnson filed his second successive postconviction petition, the subject of this

appeal. He argued that his natural life sentence violates both the eighth amendment to the United

3

States Constitution and the proportionate penalties clause of the Illinois Constitution. He claimed the trial court failed to consider his youth and imposed a life sentence without finding that he was permanently incorrigible or depraved. The trial court denied leave to file his petition, finding that the *Miller* line of cases did not apply to Johnson because at the time of his offense, as a 19-year-old, he was no longer a juvenile.

¶ 9                                          Analysis

¶ 10    Most of the principles we set out in our opinion in *Ruiz* apply to Johnson with no modification. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) allows a petitioner to raise claims that his or her constitutional rights were violated in the original trial or sentencing proceedings. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). The Act contemplates the filing of only one postconviction petition. *Id.*at 456. Claims not raised in the initial petition are waived (*id.* at 459; see also 725 ILCS 5/122-3 (West 2018)) except where a defendant (i) shows cause for and prejudice from failing to raise the claim in the initial petition or (ii) makes a colorable claim of actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459-60. We review the trial court's decision to deny leave to file a successive petition *de novo*, accepting all well-pled facts and affidavits as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 11    Johnson raises the Eighth Amendment, Illinois Proportionate Penalties Clause, and cases interpreting them. He argues that his discretionary life sentence is unconstitutional as applied. Johnson must "demonstrate[ ] cause for his *** failure to bring the claim in his *** initial post-conviction proceedings and [that] prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2018). The Act defines "cause" as "an objective factor that impeded [the petitioner's] ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.* "Prejudice" involves a "demonstrati[on] that the claim not raised during [the petitioner's] initial post-

4

conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* The cause-and-prejudice test establishes a more onerous standard than that at the first pleading stage. *People v. Smith*, 2014 IL 115946, ¶ 35. Leave to file a successive petition should be denied where (i) the petitioner's claims "fail as a matter of law" or (ii) the petition and accompanying documents are "insufficient to justify further proceedings." *Id.*

¶ 12    The State's brief contains a lengthy argument that Johnson has failed to establish cause because his claims fit neither within the United States Supreme Court's cases interpreting the eighth amendment nor our supreme court's cases interpreting our constitution. These arguments are better addressed to whether Johnson established prejudice. Our supreme court's focus, when considering cause in the *Miller* context, has been on whether the argument was available to earlier counsel. See *People v. Davis*, 2014 IL 115595, ¶ 42 ("*Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel." (citing *Pitsonbarger*, 205 Ill. 2d at 460-61)). Johnson filed at least two of his previous petitions after the Supreme Court's decision in *Miller*, but only this petition was filed after a decision extending *Miller* to young adults. See *People v. House*, 2015 IL App (1st) 110580, *vacated and remanded*, No. 122134 (Ill. Nov. 28, 2018). Because the argument Johnson now makes would have been unavailable to earlier counsel, he has shown cause for failing to raise this claim in an earlier proceeding.

¶ 13    As to prejudice, we first dispose briefly of Johnson's eighth amendment argument. In a series of cases, the United States Supreme Court found that the eighth amendment prohibits capital punishment and mandatory life sentences for juvenile offenders. *People v. Buffer*, 2019 IL 122327, ¶ 16 (citing *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005) (prohibiting capital punishment for juveniles), *Graham v. Florida*, 560 U.S. 48, 82 (2011) (prohibiting mandatory life sentences for juveniles convicted of nonhomicide offenses), and *Miller*, 567 U.S. at 489 (prohibiting mandatory

life sentences for juveniles convicted of murder)). Our supreme court has read the eighth amendment protections afforded to juvenile sentencing to extend to discretionary life sentences. *People v. Holman*, 2017 IL 120655, ¶ 40.

¶ 14    Johnson's life sentence qualifies him for the protections that *Miller* affords if he is considered a juvenile. But Johnson was 19 when he committed his offense. Our supreme court has recently, and forcefully, reaffirmed 18 as the age cutoff for juvenile sentencing protections in the eighth amendment context. *People v. Harris*, 2018 IL 121932, ¶¶ 54-61. Johnson cites no Illinois cases that cast doubt on *Harris*, instead relying heavily on secondary sources explaining the brain development of young adults. *Harris* rejected that argument, (*id.* ¶¶ 59-60), and we must follow *Harris*'s interpretation of the eighth amendment.

¶ 15    That said, while *Harris* foreclosed Johnson's eighth amendment argument, it pointedly left open the applicability of the Illinois Constitution. See *id.* ¶¶ 46-48 (inviting defendant to raise his Illinois constitutional challenge to his life sentence in collateral proceeding, either by postconviction petition or petition for relief from judgment). Johnson argues that he has adequately alleged prejudice under the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11) to warrant the filing of his successive petition. We agree.

¶ 16    The State's brief appears to accept the premise that *Miller* protections could, in certain circumstances, apply to young adults under the Illinois Constitution. See *Harris*, 2018 IL 121932, ¶¶ 46-48. The State makes two arguments that those protections do not apply to Johnson: (i) *Miller* protections cannot apply because Johnson's sentence was discretionary, and (ii) the trial court at Johnson's original sentencing considered facts similar to what our supreme court has since deemed the *Miller* factors. See *Holman*, 2017 IL 120655, ¶ 46. We reject the State's first argument and consider its second argument premature.

¶ 17    In *People v. House*, 2019 IL App (1st) 110580-B, ¶ 65, the appellate court held that the Illinois Constitution prohibits a mandatory life sentence for a young-adult offender who was 19 at the time of the offense. The court ordered a new sentencing hearing, during which "both defendant and the State will have the opportunity to fully explore defendant's argument and the evolving science on juvenile brain development." *Id.* ¶ 72. We find *House* well reasoned.

¶ 18    The State distinguishes *House*—the sentence in *House* was mandatory, and Johnson's was discretionary. Recently, another division of this court distinguished *House* on a similar ground. *People v. Handy*, 2019 IL App (1st) 170213, ¶¶ 40-41. We see no support for distinguishing *House* on this basis. The Illinois Supreme Court has eliminated the distinction between mandatory and discretionary life sentences when juveniles raise constitutional challenges. See *Buffer*, 2019 IL 122327, ¶ 27 (to succeed on *Miller* claim, juvenile must show, in part, that he or she "was subject to a life sentence, mandatory or discretionary" (citing *Holman*, 2017 IL 120655, ¶ 40)). If Johnson has adequately alleged that *Miller* applies to him as a young adult, the distinction between mandatory and discretionary sentences evaporates.

¶ 19    The State goes on to argue, and the dissent concludes, that, assuming we find *Miller* potentially applies to Johnson as a young adult, the trial court adequately considered his youth and attendant characteristics at his original sentencing. At oral argument, much discussion centered on our supreme court's decision in *Holman* and the later application of *Holman* in *People v. Croft*, 2018 IL App (1st) 150043. In *Holman* the supreme court said: "A court revisiting a discretionary sentence of life without parole must look at the cold record to determine if the trial court considered" a set of five factors. *Holman*, 2017 IL 120655, ¶¶ 46-47. Those factors include (i) defendant's chronological age and any accompanying evidence of "particular immaturity, impetuosity, and failure to appreciate risks and consequences"; (ii) defendant's family and home

environment; (iii) the defendant's degree of participation in the homicide and any evidence of familial or peer pressure; (iv) defendant's incompetence, specifically his or her inability to deal with police officers or lawyers; and (v) defendant's prospects for rehabilitation. *Id.* ¶ 46. In *Croft*, we applied those factors to a juvenile defendant on appeal from the second stage of successive post-conviction proceedings and affirmed because the trial court at the original sentencing had sufficiently considered all the *Holman* factors. *Croft*, 2018 IL App (1st) 150043, ¶¶ 24-32. The State urges us to follow the same procedure.

¶ 20    We decline that invitation due to a host of material distinctions between *Holman* and *Croft* and Johnson's case. First, and most significantly, the defendants in *Holman* and *Croft* were juveniles at the time of their offenses. *Holman*, 2018 IL 120655, ¶ 1; *Croft*, 2018 IL App (1st) 150043, ¶ 4. This means *Miller* presumptively applied to them as a matter of law. *Harris*, 2018 IL 121932, ¶ 44 ("the defendant in *Holman* fell squarely under *Miller* because he was a juvenile when his crime was committed"). Johnson has to make a preliminary showing before the court undertakes a *Holman* analysis. He must establish that *Miller* applies to him in the first place.

¶ 21    As we said at the outset, this greatly narrows the relief we can afford to Johnson. We remand to allow him to put forward evidence to support his claim that *Miller* applies to him. The *Holman* factors undoubtedly lie ahead of him, but only if he can make that first showing.

¶ 22    We also point out the critically different procedural postures of *Holman* and *Croft*. In *Holman*, the juvenile defendant sought leave to file a successive postconviction petition in which he did not raise a *Miller* claim. *Holman*, 2018 IL 120655, ¶ 27. Our supreme court addressed the merits of his claim "in the interests of judicial economy" because the original record had been sufficiently developed for an as-applied claim. *Id.* ¶ 32. Most importantly, immediately before announcing the applicable considerations, *Croft* distilled a five-factor test. As the Illinois Supreme

Court said: "For *juvenile* defendants like the defendant *** any inquiry into the *Miller* factors is backwards-looking." (Emphasis added.) *Id.* ¶ 47. That the defendant was a juvenile presented a foundational premise. The record had been sufficiently developed because no fact-finding was needed to determine whether *Miller* applied to a juvenile defendant.

¶ 23     The procedural differences between *Croft* and Johnson are even more stark. The defendant in *Croft* already had been granted leave to file his successive postconviction petition, had been appointed counsel, and had his petition dismissed at the second stage of postconviction proceedings. *Croft*, 2018 IL App (1st) 150043, ¶ 12. So the proceedings had reached the stage in which the burden on the defendant is higher and after which appointed counsel had an opportunity to further develop his claims. See 725 ILCS 5/122-4 (West 2018). And, as we have said at some length already, the defendant in *Croft*, because he was a juvenile, did not have to make the preliminary showing under *Harris* that the *Miller* line of cases applied to him.

¶ 24     We have no quarrel with the procedures announced in *Holman* and applied in *Croft*. Indeed, if Johnson convinces the trial court on remand that *Miller* applies to him as a young adult, the trial court will have to consider *Holman* and *Croft* before it can grant resentencing.

¶ 25     We find that considering *Holman* now puts the proverbial cart before the horse. As *Harris* instructs, young adult defendants are not entitled to a presumption that *Miller* applies to them (as were the defendants in *Holman* and *Croft*). See *Harris*, 2018 IL 121932, ¶ 44. When young adults raise claims that the *Miller* line of cases applies to them, we read our supreme court's precedents to set out the following procedure:

> (i) under *Harris*, a young adult defendant must plead, and ultimately prove,
>
> that his or her individual characteristics require the application of *Miller*;

(ii) if, and only if, the young adult makes this showing, then the trial court considers whether the initial sentencing hearing complied with *Miller*, following our supreme court's guidance in *Holman* and the analysis in *Croft*; and

(iii) if the initial sentencing hearing was *Miller*-compliant, then the trial court can reject the defendant's claim (as the courts did in *Holman* and *Croft*); or if the initial sentencing hearing was not *Miller*-compliant, then the trial court should order resentencing.

¶ 26    Contrary to the dissent's assertions, this procedure does not "fail[ ] to recognize that the 'prejudice' factor must be shown." We simply disagree about the nature of the prejudice. By failing to raise the claim in his initial postconviction petition, Johnson was deprived of an opportunity to make a *Miller* argument at all due to his status as an adult at the time of the offense. In other words, even if he had raised a *Miller* claim in his initial petition, it would have been rejected out of hand because of his age. By pleading *Miller*'s applicability to him as a young adult, Johnson has attempted to cure that prejudice. We agree that he should be given that chance in further postconviction proceedings.

¶ 27    As *Harris* instructs, young adult defendants are not entitled to make an as-applied challenge to their sentences under *Miller* unless they first show that *Miller* applies to them. *Harris*, 2018 IL 121932, ¶ 45 ("The record must be developed sufficiently to address defendant's claim that *Miller* applies to his particular circumstances."). If our supreme court conceptualized prejudice in the same way as the dissent, then much of the analysis in *Harris* makes no sense—the court would have just assumed *Miller* applied to the defendant and evaluated his initial sentencing hearing. Of course, the court did not do that. Indeed, the dissent's rationale, by sidelining *Harris*,

provides Johnson with a merits ruling on his *Miller* claim to which he may not be entitled. The trial court should determine the applicability of *Miller*, as a factual matter, in the first instance.

¶ 28    This leads to the State's last argument, that Johnson has failed to plead enough facts to warrant further proceedings on his claim that emerging brain science about the development of young adults applies to him. We disagree.

¶ 29    Johnson's petition argues "his mentality and level of maturity at the time [of his offense] made him more similar to adolescents than fully mature adults," pointing to "[r]ecent research in neurobiology and developmental psychology [that] has shown that the brain doesn't finish developing until the mid-20s." In support of this claim, Johnson attached his own affidavit, which, at this point, we accept as true. *Edwards*, 2012 IL App (1st) 091651, ¶ 25. Johnson described his childhood, during which he experienced turmoil about his racial identity. His "white friends" told him that he was "not a n****r like the rest of them," and his black friends "told [him] that [he] sound[ed] and act[ed] white" and that he was "a sell-out or race traitor." According to his affidavit, this led to peer pressure to "prove [his] blackness" by "transform[ing] into a thug, a rebel for the hell of it, with a 'me against the world' attitude." Johnson had "street friends," one of whom was older (26) and encouraged him "to purchase a couple pounds of weed" to make money. Johnson squandered that money "[buying] clothes, part[ying], and just generally spen[ding]" it recklessly. He eventually started using weed and losing interest in his jobs.

¶ 30    Johnson's affidavit acknowledges he is not trying to justify his crimes but rather seeks to "show the basis for the immature, irrational cycle of thoughts that contributed to [his] willingness to commit crimes." Johnson explains that "most of the young men [he] knew and encountered were in street gangs and regularly engaged in street activities, including violence and drug hustling." Johnson "feared for [his] safety" but could not show it; instead he "had to toughen up,

be more 'gangsta.' " Johnson understood his choice to hang out with this kind of crowd, but it "was more natural to [his] immature mind than it was for [him] to extricate [him]self from those relationships or to find new associations." Johnson concedes his conscious plan to rob his workplace (the offense) but alleges that his "immature mind did not have the fortitude to executively pull out of the plan" once he saw that his boss was there.

¶ 31     Johnson also attached an article to his petition called "Young Adults in Conflict with the Law: Opportunities for Diversion." The study highlights other jurisdictions around the world that extend juvenile criminal provisions to young adults, for example, up to the age of 21 (Germany) or 25 (Sweden). The article shows that criminality in Illinois specifically increases for offenders "as young people reach adolescence and decline in the early 20s." Johnson attached several more articles suggesting that brain development is not complete until the age of 25. We find Johnson's claim that developing brain science may apply to his specific circumstances to be sufficiently supported by the materials attached to his petition—at least, sufficiently supported to warrant further proceedings.

¶ 32     Johnson submitted a motion to cite *People v. Carrasquillo*, 2020 IL App (1st) 180534. We granted the motion, but find *Carrasquillo* too different to be of any help. When analyzing the prejudice prong of the cause and prejudice test, the court emphasized three factors that set *Carasquillo* apart: (i) defendant's age had been misstated in the review of his sentence on direct appeal; (ii) defendant's sentence was clouded by the specter of corruption where his "sentence on one of the very harshest that Judge Wilson delivered, and Judge Wilson did so during a year when he had accepted a bribe, during a trial with a conspicuous police presence and to an 18-year old with no prior criminal record"; and (iii) defendant had been eligible for parole and had his requests denied. *Id.*, ¶¶ 110-111. The analysis in *Carrasquillo* is unique to that case when it comes to a

*Miller* claim given all the individualized facts animating its analysis. We find nothing disagreeable in *Carrasquillo*, it simply does not aid our consideration of Johnson's appeal.

¶ 33   As this court recently reaffirmed, "Illinois has been a national leader in the field of juvenile justice." *In re Mathias H.*, 2019 IL App (1st) 182250, ¶ 29 (quoting *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 32). But we are not the first state to extend *Miller* considerations to young adults over 18. In the state of Washington, for example, the supreme court referred to "studies that established a clear connection between youth and decreased moral culpability for criminal conduct" and held that "a trial court must be allowed to consider youth as a mitigating factor when imposing a sentence on an offender like [defendant], who committed his offense just a few days after he turned 18." *State v. O'Dell*, 358 P.3d 359, 366 (Wash. 2015). In this way, the law must often play catch-up to other fields of empirical study. Take as an example, *Robinson v. California*, 370 U.S. 660 (1962), where the United States Supreme Court relied on shifting understanding of the nature of addiction—that it is an illness, not a crime—to find the criminalization of addict status unconstitutional. As Justice Douglas observed in his concurrence, centuries of common thought about the nature of addiction had turned out to be wrong. *Id.* at 668-78 (Douglas, J. concurring).

¶ 34   At this stage, we must accept Johnson's allegations as true. *Edwards*, 2012 IL App (1st) 091651, ¶ 25. Johnson's claim is not barred by our conception of what the law has been; it should have been allowed to proceed based on his well-pled assertions. See *Harris*, 2018 IL 121932, ¶¶ 46-48. Of course, on remand, he has to prove his claims, and the trial court will, at the appropriate stage, be able to judge the credibility of those claims. But we are at the pleading stage. Johnson has made a *prima facie* showing that *Miller* applies to him as a young adult.

¶ 35    We reverse the trial court's denial of leave to file his successive postconviction petition and remand for further proceedings consistent with the Post-Conviction Hearing Act.

¶ 36    Reversed and remanded.

¶ 37    JUSTICE PIERCE, dissenting.

¶ 38    I agree with the majority's finding that Johnson's eighth amendment claim lacks merit. However, I write to express my disagreement with the majority's finding that Johnson's case should be remanded to the circuit court to allow him an opportunity to prove his *Miller* claims, and, if proven, to then allow the trial court the opportunity to judge the credibility of those claims. I do not think that *Miller* principles should apply to this 19-year-old defendant, but even assuming *Miller* would apply, Johnson should not be granted leave to file a successive postconviction petition. Johnson simply cannot establish the necessary prejudice where the record of his sentencing hearing complied with *Miller* and is consistent with the directives of *Holman*, 2017 IL 120665, and as applied in *Croft*, 2018 IL App (1st) 150043, *appeal denied*, No. 123381(Ill. May 30, 2018), *cert. denied*, ___ U.S.___, 139 S. Ct. 291 (2018).

¶ 39    The majority finds that *Harris*, 2018 IL 121932, opens the Illinois Constitution for a *Miller* challenge by way of collateral attack. I do not disagree. However, *Harris* is inapposite. In *Harris*, the 18-year-old defendant argued his 76-year sentence shocked the moral sense of the community given the facts of his case, his youth, and other mitigating circumstances. Our supreme court held that *the record before the court was insufficient* to consider the defendant's contention that *Miller* applied in the context of his proportionate penalties claim because the inadequate record could not withstand a *Holman* analysis. The record was inadequate because there was no evidentiary hearing in the trial court and the court made no findings of fact on defendant's specific circumstances to support his claim. The *Harris* court declined to consider the issue but noted that the defendant was

not foreclosed from raising the claim and that it "*could \*\*\* potentially be raised*" in a postconviction petition. *Id.* ¶ 48. Thus, rather than having a misconception of *Harris* (*supra* ¶ 27), it is apparent to me that had there been a record of *Harris*'s sentencing hearing, our supreme court would have dealt with the issue. And by acknowledging the record before us of Johnson's sentencing hearing, we would not be giving "a merits ruling on his *Miller* claim" (*supra* ¶ 27); rather, we would be following established law that Johnson has not established the prejudice necessary to file a successive postconviction petition.

¶ 40    In this case, Johnson claims, and the majority agrees, that given the procedural posture of his case, *Harris* affords him the opportunity to establish his as-applied challenge in the trial court with the assistance of postconviction counsel and, therefore, he is entitled to leave to file his successive postconviction petition. However, the *Harris* court's statement that a defendant could "potentially" raise a *Miller* claim in a postconviction petition was based on the fact that the record on appeal was insufficient to consider the defendant's claim because there was no record of any hearing or finding of facts in the trial court to support his *Miller* claim.

¶ 41    In contrast, Johnson had an extensive and detailed sentencing hearing, where the trial court considered the nature of the offense, a planned execution, defendant's social and criminal background, and, importantly, his youth. As we stated in *Croft*, "a key feature of the juvenile's sentencing hearing is that the defendant had the '*opportunity* to present evidence to show that his criminal conduct was the product of immaturity and not incorrigibility.' " (Emphasis added). *Croft*, 2018 IL App (1st) 150043, ¶ 23 (quoting *Holman*, 2017 IL 120655, ¶ 49). *Croft* noted that the *Holman* factors are "a nonexhaustive list" and that "nothing in *Miller* or *Holman* suggests that we are free to substitute our judgment for that of the sentencing court" because the issue is not the particular sentence the trial court imposed but whether the defendant had the *opportunity* to present

evidence regarding his youth and that the court considered his youth and its attendant characteristics in reaching its sentencing decision. *Croft*, 2018 IL App (1st) 150043, ¶¶ 32-33.

¶ 42    Accepting Johnson's contention that *Miller* applies to a 19-year-old (see *Edwards*, 2012 IL App (1st) 091651, ¶ 25) (at this stage we must accept Johnson's allegations as true), the majority simply fails to recognize that Johnson cannot establish prejudice because he had a *Miller-*compliant sentencing hearing. At the sentencing hearing for this 19-year-old, the trial court considered the same factors that the *Holman* court found to be constitutionally consistent with *Miller*. Consequently, in my view, because we have a sufficient record before us, the analysis employed in *Croft* is the analysis that the majority should apply and find that defendant was correctly sentenced.

¶ 43    Similar to *Croft*, and assuming that *Miller* applies to young adults like Johnson, we have the benefit of the cold, well-developed record of Johnson's sentencing hearing that allows us to determine whether that hearing met the *Miller* requirements. Because we have a more than adequate record, we must review Johnson's claim in accordance with the guidance provided under *Holman* and affirm the denial of the petition for leave to file his successive postconviction petition. Johnson clearly had the opportunity to present his youthful mitigation argument to the trial court during his sentencing hearing. ("[W]e have examined the cold record of the circuit court's [sentencing] hearing ***, which includes the common law record and report of proceedings, and find that the circuit court considered evidence of the defendant's youth and its attendant characteristics at the time of sentencing and that the defendant had" the opportunity required by *Holman*. *Croft*, 2018 IL App (1st) 150043, ¶ 24.) As in *Croft*, the trial court in this case had before it the trial testimony, the evidence, Johnson's presentence investigation report, testimony from his mother and two religious representatives attesting to his character and background, and the

sentencing arguments of the parties before it sentenced Johnson. We have the same record before us, and we can and should determine that Johnson's petition and accompanying documents are "insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 44    The cold record of Johnson's sentencing hearing emphatically demonstrates that the court did consider defendant's age and its attendant circumstances as a mitigating factor in crafting the appropriate sentence for Jewula's murder. As we observed in defendant's direct appeal, *People v. Johnson*, No. 1-99-1989 (2004) (unpublished order under Illinois Supreme Court Rule 23), the trial court recounted the facts of this case, observed that this was a contract killing, and thoroughly discussed defendant's age and attendant circumstances in crafting appropriate sentences in this case.

"The trial court conducted a sentencing hearing on May 6. In aggravation, the State presented defendant's 1995 conviction for robbery and a victim impact statement. Defendant presented the testimony of two individuals who were religious volunteers at the jail. Both of these individuals testified that defendant had accepted Jesus Christ and had taken responsibility for his actions, confessed, and repented to the "Savior." Defendant also presented testimony of his mother. The State sought a life sentence based on the brutal and heinous nature of the offenses, the fact that it was premeditated, the murder occurred in the course of another felony, and the fact that society needed to be protected from defendant. Defendant's counsel argued that the court must look to defendant's rehabilitative potential in connection with the need to protect society. Although defendant's attorney did not say so specifically, it was his inference that because defendant had accepted God, he could be rehabilitated.

In ruling on defendant's sentences, the trial court first stated that it was the court's duty to protect society, not to determine whether defendant was evil or good. It then addressed defendant's convictions for those felonies other than murder, noting the statutory ranges, both non-extended and extended for each conviction. The court noted that it was looking to the factors outlined in section 5-5-3.2 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2 (West 1998)). It then stated, 'In reviewing the facts of this case *** it's obvious from the factors presented at trial [that] the defendant was a causal factor in the death of Dorothy Jewula.' The court further stated that the evidence demonstrated that defendant had walked the streets, attempted to acquire a weapon, had planned the crimes, and then used his position of trust to commit the crimes.

The court also looked to the factors of compensation, noting that this factor was generally used in contract murder situations. However, it determined that compensation was a factor in the instant case, particularly since this was a "cold blooded planned execution." The court further looked to defendant's prior criminal history, noting that at the time of these crimes, defendant was on probation for robbery. According to the court, there was a need to deter defendant and others from future criminal acts. It also looked to the fact that the crimes were committed because defendant held a position of trust with the victim due to their employment relationship. With respect to mitigation, the court concluded that the only mitigating factor was defendant's young age, which was 19 years at the time of the offenses.

The court then addressed the brutal and heinous nature of the crimes, noting that defendant made the victim crawl into the trunk of her car and then repeatedly shot her in the face and neck at close range, constituting conduct clearly indicative of wanton cruelty. According to the court, defendant's 'conduct was devoid of mercy or compassion and cold-blooded.' The court then sentenced defendant to 60 years' imprisonment for armed robbery, 60 years' imprisonment for aggravated kidnapping, 60 years' imprisonment for aggravated vehicular hijacking, and 10 years' imprisonment for concealment of a homicidal death.

With respect to defendant's murder conviction, the court noted that the State had not sought the death penalty. In looking to relevant factors, the court relied on section 55-5-3.2(6) of the Code relative to the utilization of a person's position to afford an easier means of committing an offense (730 ILCS 5/5-5-3.2(6) (West 1998)) and the fact that the murder occurred during the course of another felony. In addition, the court noted that defendant performed acts that caused the death of the victim. The court also found that defendant's conduct was exceptionally brutal and heinous. It then sentenced him to natural life imprisonment." *Johnson*, No. 1-99-1989.

¶ 45    After imposing sentence, the trial court further discussed the brutal and heinous nature of the crime. The court noted how easy it was for defendant to take Jewula's life, without any remorse or feeling or conscience. The court stated that defendant's crime was cold and calculated and based on a position of trust with the victim. The court further stated that this homicide was different from the others he had seen and called it "a shockingly evil case." The court noted that it was particularly

19

concerned because of defendant's lack of remorse. The sentencing judge specifically found that the only mitigating fact presented was his age. The trial court was not swayed by the mitigation testimony of defendant's mother or the two religious volunteers regarding his religious conversion and acceptance of responsibility.

¶ 46 Unlike constitutionally defective juvenile sentencing hearings, where the factors of youth are not considered, after finding that defendant significantly participated in the robbery, kidnapping and murder of Jewula and finding that Johnson took steps to cover up his crime, the trial court imposed a life sentence for murder after finding that defendant committed the murder in the course of another felony, he performed the acts that caused the death of the victim and that his conduct was exceptionally brutal and heinous. Given that the sentencing court specifically noted that the only mitigating factor was the defendant's age and having conducted a thorough sentencing hearing that included mitigation testimony from his mother, there is no basis to allow Johnson leave to file his successive postconviction petition. The record of the sentencing hearing leaves no question that, even if Johnson was a juvenile at the time of this offense, the sentencing hearing would have been *Miller*-compliant, and it would have satisfied the directives of *Holman*.

¶ 47 The majority acknowledges that "[a]s *Harris* instructs, young adult defendants are not entitled to a presumption that *Miller* applies to them (as were the defendants in *Holman* and *Croft*). See *Harris*, 2018 IL 121932, ¶ 44." *Supra* ¶ 25. The majority then states that *Harris* requires that:

"(i) a young adult defendant must plead, and ultimately prove, that his or her individual characteristics require the application of *Miller*;

(ii) if, and only if, the young adult makes this showing, then the trial court considers whether the initial sentencing hearing complied with *Miller*, following our supreme court's guidance in *Holman* and the analysis in *Croft*; and

(iii) if the initial sentencing hearing was *Miller*-compliant, then the trial court can reject the defendant's claim (as the courts did in *Holman* and *Croft*); or if the initial sentencing hearing was not *Miller*-compliant, then the trial court should order resentencing." *Supra* ¶ 25.

¶ 48    The majority's approach under *Harris* is fundamentally in error because it fails to recognize that the "prejudice" factor that must be shown in order to be granted leave to file a successive postconviction petition cannot be established in this case. Johnson must establish cause ***and*** prejudice before being granted leave to file a successive postconviction petition. "Prejudice" is defined as an error so infectious to the proceedings that the resulting conviction violates due process. *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122-1(f) (West 2010). If the reviewing court can determine from the cold record that no constitutional error occurred in sentencing a juvenile (*Holman*), as we can here in the sentencing of this adult, then it follows that Johnson cannot establish the necessary prejudice to be granted leave to file his successive postconviction petition. The majority is wrong when it describes my dissent as a disagreement over the nature of the prejudice claimed. *Supra* ¶ 26. This erroneous characterization is the result of a lack of understanding of the difference between cause and prejudice in the context of a successive postconviction petition. The failure to raise a *Miller* claim in his postconviction petition may be sufficient to establish cause due to the timing of the *Miller* jurisprudence; however, the failure to establish prejudice lies in the fact that Johnson had a constitutionally compliant sentencing hearing.

¶ 49    The majority also errs in remanding to allow the filing of a successive postconviction petition. Assuming *Miller* applies here, even if the record in this case demonstrated that a constitutional error occurred due to the sentencing court's failure to consider this adult defendant's

youthful characteristics, the appropriate remedy would be to remand for a new sentencing hearing rather than to allow the defendant leave to file a successive postconviction petition.

¶ 50    In *Buffer*, 2019 IL 122327, ¶ 7, the juvenile was sentenced to a *de facto* life sentence of 50 years and sought *Miller* protection in his postconviction petition that was summarily dismissed. On review, the supreme court determined that the cold record was sufficient to review the defendant's *Miller* claim, no additional factual development was required, and the defendant's sentence was a *de facto* life sentence that was imposed without the trial court considering the defendant's youth and its attendant characteristics. *Id.* ¶ 42. The court did not allow the requested filing of the postconviction petition, and instead, the supreme court remanded for resentencing, stating:

> "[T]he record before us does not require factual development. All of the facts and circumstances to decide defendant's claim are already in the record. [Citation.] While the circuit court stated that it 'considered all of the relevant statutory requirements,' the record does not indicate that the court considered defendant's youth and its attendant characteristics. [Citation.] Accordingly, we earlier held that defendant's 50-year prison sentence, imposed for a crime he committed while a juvenile, violated the eighth amendment. This holding applies retroactively and is cognizable in defendant's postconviction proceeding. [Citation.]
>
> Based on the particular issue raised in this appeal and in the interests of judicial economy, we agree with the appellate court that the proper remedy is to vacate defendant's sentence and to remand for a new sentencing hearing." *Id.* ¶¶ 46-47.

¶ 51    In my view, even though *Miller* does not apply because Johnson was 19 at the time of the offense, the record on appeal in this case is unquestionably sufficient to decide whether Johnson's

sentencing hearing complied with *Miller*. The record establishes without question that the court considered his age as the only mitigating factor in imposing a sentence that was appropriate for the brutal execution underlying his sentence.

¶ 52    For these reasons, I respectfully dissent.

**No. 1-17-1362**

| | |
|---|---|
| **Cite as:** | *People v. Johnson*, 2020 IL App (1st) 171362 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 97-CR-25837; the Hon. Gregory Ginex, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Yasaman Hannah Navai, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |