2021 IL App (1st) 200133-U

FIFTH DIVISION
June 18, 2021

No. 1-20-0133

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) ) | |
| v. | ) ) | No. 02 CR 01833 |
| JOHN SHORES, | ) ) | Honorable Michele M. Pitman,[1] |
| Petitioner-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    ***Held:***    The circuit court did not err in denying petitioner's motion for leave to file a successive postconviction petition. Affirmed.

¶ 2    Following a jury trial, petitioner John Shores was convicted of first-degree murder and sentenced to 55 years' imprisonment. We affirmed his conviction on direct appeal (*People v. Shores*, No. 1-04-3818 (2006) (unpublished order pursuant to Supreme Court Rule 23)) and the second-stage dismissal of his initial postconviction petition (*People v. Shores*, 2016 IL App (1st)

_____

[1] The parties' briefs refer to the presiding judge by her former name, Michele M. Simmons.

133824-U).  Petitioner then filed a motion for leave to file a successive postconviction petition, which the circuit court denied.  He now appeals that denial, contending that his aggregate sentence is an unconstitutional *de facto* life sentence.  We affirm.

¶ 3                                    BACKGROUND

¶ 4     Petitioner was charged with the December 13, 2001, first-degree murder of Ian Thorne (by personal discharge of a firearm proximately causing his death).  We have fully set forth the facts in petitioner's direct appeal.  See *Shores*, No. 1-04-3818 (2006) (unpublished order pursuant to Supreme Court Rule 23).  We will thus limit our discussion of the facts to those relevant to the issues presented in this appeal.

¶ 5     Renetta Fonville testified that, while sitting in her car, she saw three young men arrive at Thorne's residence.  The men entered Thorne's home and seconds later Fonville heard a "pop."  Two of the men ran along the side of the house and the third man ran into an adjacent alley where there was a car waiting.  Fonville left the scene and contacted the police.

¶ 6     Deria Gaitors, Thorne's former roommate, testified that she accepted a plea bargain in which she pleaded guilty to conspiracy to commit a home invasion in exchange for a 10-year sentence.  Gaitors stated that she had had a falling out with Thorne and told petitioner and Ramone Samuels that Thorne kept $50,000-$100,000 in cash in the house.  Gaitors, petitioner, and Samuels then planned to rob Thorne's residence.  Gaitors saw petitioner and Samuels on December 13, 2001, at which time petitioner admitted shooting Thorne.

¶ 7     Samuels (who admitted that his testimony was in exchange for a plea bargain) testified that, on December 12, 2001, he, petitioner, and Glen Fortier—each armed with a .38-caliber handgun—went to Thorne's house but abandoned their plan when they learned that Thorne was home. On the morning of December 13, 2001, they returned to Thorne's house.  Petitioner rang

2

the doorbell, and when Thorne answered, petitioner asked to see a guest of Thorne. Samuels stated that, when Thorne turned to call for the guest, petitioner took out his gun and pushed Thorne. Thorne then moved toward petitioner, and petitioner fired a shot. Samuels said it was the same .38-caliber pistol petitioner had the previous night. The three men then fled, and Samuels and Fortier disposed of the gun before meeting at petitioner's home.

¶ 8    Samuels, petitioner, and Fortier then formulated a defense for the shooting: they would claim that, after arriving at Thorne's house and asking to see a guest of Thorne, Thorne pulled out a gun and struggled with petitioner who then shot Thorne. Samuels noted that Thorne subsequently died from the gunshot wound.

¶ 9    Following the shooting, petitioner fled the state but was later apprehended in Cobb County, Georgia. While in the custody of the Cobb County Sheriff, Cook County assistant state's attorneys took a video-recorded statement from petitioner. In that statement, petitioner explained that he conspired with Samuels, Fortier, and Gaitors to steal Thorne's money. Petitioner said that he rang the doorbell of Thorne's residence on the morning of December 13, 2001, and when he entered Thorne's house, Thorne turned and pointed a gun at petitioner. The gun discharged after a struggle. Petitioner then fled the scene and disposed of the weapon.

¶ 10    The jury subsequently found petitioner guilty of first-degree murder and that petitioner had personally discharged the firearm that proximately caused the death of Thorne. The cause then proceeded to a sentencing hearing.

¶ 11    At petitioner's sentencing hearing, the circuit court acknowledged receipt of petitioner's presentence investigation report (PSI), which showed petitioner's date of birth as March 14, 1982. Defense counsel confirmed for the court that there were no additions, deletions, or other modifications to the PSI. In aggravation, the State noted that petitioner was a high school graduate

3

and actively employed, which according to the State, "just add[ed] to the complete[] and utter senselessness of this murder." The State asked the court to consider the victim impact statement and the trial evidence in sentencing petitioner.

¶ 12    In mitigation, defense counsel agreed that petitioner had graduated from high school, was employed, and continued studying even while incarcerated. Counsel asked the circuit court to sentence petitioner to the minimum 45 years, explaining, "what we're looking at here is basically someone going from their early teens into, approaching mid-age, even at the very lowest end of the sentence that you're allowed to give him." In allocution, petitioner denied intentionally murdering Thorne but expressed remorse over his killing, stating that the gun went off during a struggle and that it was "an accident that shouldn't have happened." Petitioner apologized to both Thorne's family and his own for "put[ting] you all through a lot of stuff."

¶ 13    Following arguments in aggravation and mitigation, the circuit court pronounced its sentence. The court found that petitioner and "his confederates" planned to commit the robbery regardless of whether Thorne or others were present. The court further commented, "It never ceases to amaze me how people [cannot] see beyond the immediate moment [or] that there are consequences for their acts in life." The court characterized petitioner as "a very dangerous person," and it further surmised that, if petitioner or his "confederates" so easily led each other to commit this offense, then petitioner was "a potential keg of dynamite [without ] the foresight to believe that there are consequences" for his acts. The court reiterated that petitioner caused an immeasurable amount of pain to the victim's family. After reciting a poem by Lawrence Binion, the court noted that, although the sentencing range was initially 20 to 60 years, petitioner's potential minimum sentence was 45 years' imprisonment because the jury found that petitioner

fired a gun that caused the victim's death. The court then sentenced petitioner to 55 years' imprisonment.

¶ 14    On direct appeal, petitioner raised issues regarding jury instructions and ineffective assistance of counsel. See *Shores*, No. 1-04-3818 (2006) (unpublished order pursuant to Supreme Court Rule 23). This court, however, rejected petitioner's contentions and affirmed his conviction and sentence. See *id.* Petitioner later filed a postconviction petition contending that that the State violated the disclosure rule set forth in *Brady v. Maryland,* 373 U.S. 83 (1963). The circuit court, however, granted the State's second-stage motion to dismiss, and this court affirmed.[2] See *Shores*, 2016 IL App (1st) 133824-U.

¶ 15    On October 1, 2017, petitioner filed the present motion for leave to file a successive postconviction petition. A proposed successive petition was attached to the motion. In his motion, petitioner contended that his 55-year sentence was an unconstitutional *de facto* life sentence pursuant to the holdings in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny.[3] Petitioner noted that he was sentenced as a 19-year-old young adult and argued that new research in neurobiology and developmental psychology "proves" that his brain development at the time of the offense was closer to an adolescent's than an adult's. In support of his claim, petitioner attached copies of various scientific studies discussing the brain development of juveniles and young adults in general. He then concluded that, since a young adult's brain is not more developed than a juvenile's, he was entitled to "*Miller* [*v.*] *Alabama*-[]type protection," and his sentence

---

[2]    We also corrected petitioner's mittimus to reflect the correct amount of presentence custody credit.

[3]    Petitioner further challenged the constitutionality of "the statu[t]e that allow[ed] the *** trial court to charge, convict[,] and sentence the petitioner as a[n] adult," but he has abandoned that claim on appeal.

violated both (1) the proportionate penalties clause of the Illinois constitution as applied to him and (2) the Eighth Amendment of the federal constitution.

¶ 16    Petitioner added that he showed cause for his failure to raise this claim in his initial petition and prejudice resulting from this failure. As to cause, petitioner argued that the newly discovered evidence in "neuroscience" as well the decisions such as *People v. House*, 2015 IL App (1st) 110580, *People v. Nieto*, 2016 IL App (1st) 121604, and *People v. Gipson*, 2015 IL App (1st) 122451, arose after the filing of his initial petition. Petitioner argued that he suffered prejudice because his 55-year sentence was unconstitutional in light of this new evidence and case law.

¶ 17    On August 30, 2019, the circuit court denied petitioner's motion. The court found that *Miller* only applies to juveniles under the age of 18, and thus did not apply to petitioner's case. The court further found that *House* was distinguishable because there, the defendant was sentenced to a natural life sentence, whereas petitioner was sentenced to a term of years. The court also rejected petitioner's claim that his sentence was a *de facto* life sentence because recent Illinois supreme court case law established that the concept of *de facto* life sentences was not expanded to 19- or 20-year-old offenders. The court thus concluded that petitioner did not satisfy the cause-and-prejudice test. This appeal follows.[4]

¶ 18                                    ANALYSIS

¶ 19    Petitioner contends that the circuit court erred in denying his motion for leave to file a successive postconviction petition. Petitioner argues that, although he was a young adult at the time of the offense, he should be allowed to develop a record in the court below to show that

---

[4] On March 31, 2021, our supreme court issued a supervisory order directing us to treat the notice of appeal file-stamped October 4, 2019, as a properly perfected appeal from the circuit court's August 30, 2019, order. See *Shores v. Justices of the Appellate Court, First District*, No. 127060 (Ill. Mar. 31, 2021) (supervisory order).

juvenile sentencing provisions should also apply to him. Petitioner further claims that, at sentencing, the court did not adequately consider his youth and the attendant circumstances of youth. Petitioner asserts that his motion met the cause-and-prejudice test for obtaining leave to file a successive postconviction petition, and he asks that we reverse the court's denial and remand this cause for further postconviction proceedings.

¶ 20    The Act allows a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are *res judicata,* and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed forfeited. *Id.* at 274; 725 ILCS 5/122-3 (West 2016).

¶ 21    Moreover, the Act provides that only one petition may be filed by a petitioner without leave of court. 725 ILCS 5/122-1(f) (West 2016). As a result, successive postconviction petitions are "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39. The granting of leave to file a successive petition is governed by the cause-and-prejudice test, where cause is defined as some objective factor external to the defense that impeded efforts to raise the claim in an earlier proceeding, and prejudice occurs where the alleged error "so infected" the trial that the resulting conviction or sentence violates due process. *Id.* ¶ 14 (quoting 725 ILCS 5/122-1(f) (West 2014)).

¶ 22    To meet the cause-and-prejudice test for a successive petition, a petitioner must " 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *People v. Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)).  Both elements of the cause-and-prejudice test must be met for the petitioner to prevail.  *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002).  The cause-and-prejudice test is a "more exacting standard" than the " 'gist' standard" under which initial postconviction petitions are reviewed. *People v. Conick*, 232 Ill. 2d 132, 142 (2008).  We review *de novo* the circuit court's denial of leave to file a successive petition.  *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 32.

¶ 23    Petitioner first contends that *Miller*, which held that the Eighth Amendment prohibited mandatory life sentences for offenders under the age of 18, should nonetheless extend to young adult offenders such as himself.  Petitioner argues that the circuit court should not have imposed a 55-year "*de facto* life term [of imprisonment]" on him without considering his "youth, the attending circumstances of youth, and his lack of a prior criminal record."

¶ 24    Petitioner's claim is unavailing.  At the outset, the record in this case clearly indicates that the circuit court had received petitioner's PSI, which contained information regarding petitioner's youth, employment status, and lack of a criminal record.  It is a firmly rooted presumption that a circuit court has considered any mitigating evidence before it, absent some indication to the contrary other than the sentence itself.  *People v. Thompson*, 222 Ill. 2d 1, 45 (2006) (citing *People v. Burton*, 184 Ill. 2d 1, 34 (1998)).  Petitioner has provided no such indication to the contrary.

¶ 25    Moreover, *Miller* explicitly held that the Eighth Amendment only prohibits "mandatory life without parole *for those under the age of 18*" at the time of their crimes.  (Emphasis added.) *Miller*, 567 U.S. at 465.  Our supreme court later observed that, when the United States Supreme Court held that 18 would be the age to differentiate between juvenile and adult offenders, it was

not "based primarily on scientific research" and merely coincided with the point where society determines adulthood and childhood for many other purposes. *People v. Harris*, 2018 IL 121932, ¶ 60 (citing *Roper v. Simmons*, 543 U.S. 551, 574 (2005)). The *Harris* court further noted that new research findings still did not alter that "traditional line." *Id.* The court then expressed agreement with those courts that had repeatedly rejected this claim and held that the age of 18 still marked the line between juveniles and adults for sentencing purposes. *Id.* ¶ 61. Petitioner's apparent wish to redraw that line is a task for the legislature. See generally, *People v. Buffer*, 2019 IL 122327, ¶¶ 34-35. The court thus did not err in denying the motion based upon this claim.

¶ 26    Petitioner next contends that his sentence violates the proportionate penalties clause of the Illinois constitution. This clause provides in relevant part that "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (citing *People v. Moss,* 206 Ill. 2d 503, 522 (2003)). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and "the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 27    Petitioner argues that his sentence shocks the moral conscience of the community because of petitioner's background and recent studies on adolescent brain development. Petitioner also argues that, pursuant to our supreme court's holding in *Harris*, his petition must advance for further proceedings. Petitioner also relies upon numerous decisions from this court in support of his claim, including *People v. Carrasquillo*, 2020 IL App (1st) 180534; *People v. Minniefield*, 2020 IL App

(1st) 170541; *People v. Ruiz*, 2020 IL App (1st) 163145; *People v. Johnson*, 2020 IL App (1st) 171362; and *People v. House*, 2019 IL App (1st) 110580-B.

¶ 28     In *Harris*, the 18-year-old defendant argued on direct appeal that his 76-year sentence shocked the moral sense of the community given the facts of his case, his youth, and other mitigating circumstances.  *Harris*, 2018 IL 121932, ¶ 36.  The court, however, noted that there was no evidentiary hearing or factual development in the trial court to support his claim.  *Id.* ¶ 46.  The court thus held that the record was insufficiently developed to address his contention that *Miller* applied to his proportionate penalties claim.  *Id.* ¶ 48.  Nonetheless, the *Harris* court observed that the defendant could potentially raise the claim in a postconviction petition.  *Id.*

¶ 29     With respect to this proportionate penalties claim, petitioner argues that he should have the opportunity to develop the record to determine whether the protections of *Miller* can apply to an 18-year-old offender.  Successive postconviction petitions, however, are "highly disfavored" (*Bailey*, 2017 IL 121450, ¶ 39) and meeting the cause-and-prejudice test is a "more exacting standard" than the test for surviving the first stage of an initial postconviction petition (*Conick*, 232 Ill. 2d at 142).  In addition, a petitioner must submit enough documentation to allow a circuit court to determine whether the cause-and-prejudice test has been met.  *Smith*, 2014 IL 115946, ¶ 35 (quoting *Tidwell*, 236 Ill. 2d at 161).  The *Harris* court did not specify the requirements to meet the cause-and-prejudice test.

¶ 30     Here, there is nothing to indicate how petitioner's *specific* own immaturity or individual circumstances constitute compelling reasons to allow him to file a successive postconviction petition.  Instead, his motion merely relies upon articles from various periodicals containing *general* assertions that immaturity and brain development commonly associated with juveniles can also extend into young adulthood.  Petitioner's recitation of various studies regarding the evolving

science of juvenile maturity and development is insufficient to survive the more exacting standard that would warrant the filing of a successive postconviction petition. *People v. Holman*, 2017 IL 120655, ¶¶ 30 (citing *People v. Thompson*, 2015 IL 118151); *cf. Johnson*, 2020 IL App (1st) 171362, ¶¶ 29-31 (holding that the petitioner's claim warranted further proceedings where he submitted an affidavit supporting his claim that, although he was a young adult, his brain lacked mature development). Since petitioner failed to show prejudice under the cause-and-prejudice test, the circuit court did not err in denying his motion as to the proportionate penalties claim.

¶ 31 Relying upon *Minniefield*, *Carrasquillo*, and *Ruiz*, petitioner asserts that, although he provided only general information regarding young adult brain development, he should nonetheless be allowed leave to file his petition "so that he can develop a factual record to support his assertion that his brain 'was no more developed than a juvenile brain.' " We disagree.

¶ 32 *Minniefield* and *Carrasquillo* suggest that a young adult's mere assertion of substandard brain development *ipso facto* entitled the petitioners in those cases leave to file their petition. *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109; *Minniefield*, 2020 IL App (1st) 170541, ¶ 44. In particular, the *Carrasquillo* court held, "[The defendant] has shown prejudice by establishing a 'catch-22'—without a developed record, he cannot show his constitutional claim has merit, and without a meritful [*sic*] claim, he cannot proceed to develop a record." [Footnote omitted.] *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109. *Minniefield*, which had the same author as *Carrasquillo*, merely quoted that holding verbatim. *Minniefield*, 2020 IL App (1st) 170541, ¶ 44 (quoting *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109).

¶ 33 Similarly, in *People v. Ruiz*, 2020 IL App (1st) 163145, the court held that the petitioner stated "a claim that, as a matter of law, prejudice has been caused by reason of [his] justified failure to raise a constitutional challenge to his sentence in his initial postconviction petition." *Id.* ¶ 53.

The court explained the "nature" of the prejudice that the petitioner established: "By failing to raise the claim in his initial postconviction petition, [petitioner] was deprived of an opportunity to make a *Miller* argument at all due to his status as an adult at the time of the offense." *Id.*

¶ 34    We find these cases unpersuasive because they seem to conflict with controlling precedent requiring that, to obtain leave to file a successive petition asserting a proportionate penalties violation, a petitioner provide some evidence or documentation demonstrating that *the petitioner's own* brain development was delayed.[5]  See, *e.g.*, *Smith*, 2014 IL 115946, ¶ 35 (documentation required to allow circuit court to determine whether the cause-and-prejudice test met); *Conick*, 232 Ill. 2d at 142 (meeting the cause-and-prejudice test is a more exacting standard than the test to survive summary dismissal at the first stage of an initial postconviction petition).  Although petitioner here seeks to "develop" a factual record to support his claim, this presupposes the existence of *some factual basis specific to petitioner*.  Our reading of controlling precedent is that, although a petitioner's factual record need not be *fully* developed merely to obtain leave to file the petition, there must be some threshold amount of evidence that would warrant the filing of the successive petition and then the subsequent factual development of the proffered evidence. Petitioner here, however, has provided only general studies that the typical young adult's brain (but not necessarily his) is not much more developed than a typical juvenile's.

¶ 35    Finally, petitioner's reliance upon *People v. House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Jan. 29, 2020), is unavailing.  In that case, another division of this court held

---

[5]  In addition, *Ruiz* appears to hold that prejudice is shown "as a matter of law" if cause has been met, which we believe also conflicts with controlling precedent.  See, *e.g.*, 725 ILCS 5/122-1(f) (West 2018); *Smith*, 2014 IL 115946, ¶ 34 (holding that a petitioner's *pro se* motion for leave to file a successive postconviction petition meets the cause and prejudice requirement of section 122-1(f) if the motion adequately alleges *facts* demonstrating cause *and* prejudice).

that the defendant's mandatory life sentence (following a conviction for murder by accountability) violated the proportionate penalties clause, where the defendant was 19 years old at the time of the offense, had no prior violent criminal history, and was minimally culpable since he acted solely as a lookout. *House*, 2019 IL App (1st) 110580-B, ¶¶ 46, 64. Moreover, the *House* court stated that the defendant's 1993 conviction under an accountability theory "weighed heavily in our conclusion that his mandatory natural life sentence shocked the moral conscience of the community." *Id.* ¶ 32. The court further noted that, although the defendant received a mandatory natural life sentence, the 17-year-old codefendant, who "either fired the gun at the victims or struck them with the gun," was sentenced to 44 years' imprisonment with day-for-day good conduct credit and released in April 2018. *Id.* ¶¶ 35-36.

¶ 36    Here, petitioner was not convicted merely based upon accountability: he was the actual shooter, and witness testimony established that he shot and killed Thorne during a botched robbery attempt. The evidence at trial further revealed the petitioner rang Thorne's doorbell, and when Thorne answered, petitioner asked to speak with one of Thorne's guests. When Thorne turned away to call for the guest, petitioner pulled out a gun, pushed Thorne, and then shot him after he allegedly walked toward petitioner. Petitioner and the others then fled the scene and disposed of the weapon. Petitioner was later arrested in Georgia. Petitioner's 55-year sentence for first-degree murder comprised a 30-year sentence, which was near the minimum term of 20 years plus the mandatory 25-year-to-life firearm add-on. 730 ILCS 5/5-8-1(a)(1)(a) (West 2000) (sentencing range of 20 to 60 years); 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000) (mandatory firearm add-on of 25 years to natural life). On these facts, *House* is distinguishable, and we cannot hold that petitioner's sentence shocks the moral sense of the community.

¶ 37                                    CONCLUSION

¶ 38    The circuit court did not err in denying petitioner's motion for leave to file a successive postconviction petition because, in both his motion for leave to file a successive postconviction petition and the proposed postconviction petition itself, he failed to sufficiently set forth a sufficient basis for a proportionate penalties claim and did not have a viable eighth-amendment claim. Accordingly, we affirm the judgment of the circuit court.

¶ 39    Affirmed.