2021 IL App (1st) 190983-U

THIRD DIVISION
February 10, 2021

1-19-0983

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 21695 |
| | ) | |
| JORGE RODRIGUEZ, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justice Ellis concurred in the judgment.
Justice Burke dissented.

ORDER

¶ 1   *Held*:   The judgment of the circuit court of Cook County denying defendant's motion for leave to file a successive petition for postconviction relief is reversed; defendant demonstrated cause for his failure to bring the claim in his successive petition during his initial postconviction proceedings because the law and science underpinning the claim did not yet exist; defendant demonstrated prejudice from the failure to bring the claim in his initial postconviction petition because defendant demonstrated that his sentence violates due process where the trial court sentenced defendant to a discretionary *de facto* life sentence without first considering his youth and its attendant circumstances and without a finding of defendant's incorrigibility.

¶ 2   The circuit court of Cook County entered judgment on defendant's conviction for the

2001 first degree murder of Mario Avila and sentenced defendant, Jorge Rodriguez, to an

aggregate term of imprisonment of 50 years.  This court affirmed defendant's conviction and

sentence on direct appeal.  In 2008 defendant filed a *pro se* petition for postconviction relief

(initial petition). The initial petition argued, in part, that defendant's sentence was unconstitutional because it failed to consider his age at the time of the offense, his lack of a substantial adult criminal history, and the fact someone other than defendant facilitated defendant's conduct in the commission of the murder. Defendant was 18-years old when the murder occurred.

¶ 3    This court affirmed the summary dismissal of the initial petition. In 2017 defendant filed a motion for leave to file a successive petition for postconviction relief (successive petition) which is the subject of this appeal. The successive petition argues, in part, defendant's sentence is unconstitutional under the eighth amendment to the United States Constitution as applied to him and violates the Proportionate Penalties Clause of the Illinois Constitution in light of new sentencing principles applicable to juveniles and young adults. The circuit court of Cook County denied defendant's motion for leave to file the successive petition. For the following reasons, we reverse and remand with instructions.

¶ 4                              BACKGROUND

¶ 5    This court previously set forth the evidence leading to defendant's conviction with our disposition of his direct appeal of that conviction and his sentence in *People v. Rodriguez*, 372 Ill. App. 3d 797 (2007). For purposes of the instant appeal it will suffice to note defendant is convicted under a theory of accountability for a first degree murder that took place when defendant was 18-years old. Defendant's participation in the offense consisted of "setting up" the victim by arranging an illegal drug purchase; acting as a lookout while a codefendant shot the victim; hiding the victim's body; and disposing of the murder weapon (which was later recovered by police) and other potential evidence. A jury convicted defendant and the trial court sentenced him to 35 years' imprisonment for first degree murder with an additional mandatory

(at the time) add-on of 15 years because defendant was armed with a firearm during the commission of the offense, for an aggregate sentence of 50 years' imprisonment. Defendant's attorney's entire argument in mitigation at trial was the following:

> "Judge, Mr. Rodriguez is currently 22 years of age. He was 18 years of age at the time of his arrest. Mr. Rodriguez was living with his girlfriend. He went through the senior year of high school. Had previously resided with his mother whom he still has a relationship with. This was Mr. Rodriguez's first adult intervention with law enforcement.
>
> We also ask that there be no additional enhancement inasmuch as the State's own contention Mr. Rodriguez himself did not possess or use a gun in this instance."

The trial court's complete statement in sentencing defendant was:

> "Mr. Rodriguez, on the charge of first degree murder, the sentence will be, on Count I 35 years Illinois Department of Corrections. Additional 15 years entered on the sentence pursuant to the statute also."

¶ 6    This court affirmed defendant's conviction and sentence on direct appeal and, later, affirmed the summary dismissal of defendant's initial petition for postconviction relief.

¶ 7    In 2017 defendant filed a motion for leave to file a successive petition for postconviction relief. Defendant's successive petition claims, in relevant part, that defendant's sentence is a *de facto* life sentence and violates the Illinois Constitution as applied to him. The successive petition also contains a claim defendant's sentence violates the eighth amendment as applied to defendant in light of principles announced by the United States Supreme Court in *Miller v.*

*Alabama*, 567 U.S. 460 (2012). The successive petition claims defendant will be 68-years old at the time of his release from prison.

¶ 8     The trial court denied defendant's motion for leave to file a successive petition for postconviction relief. The trial court found defendant failed to satisfy the cause and prejudice test necessary to raise successive postconviction claims.

¶ 9     This appeal followed.

¶ 10                                ANALYSIS

¶ 11     This is an appeal from the denial of a motion for leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)) states the Act contemplates the filing of only one petition under the Act without leave of court and, therefore, a defendant seeking to file a successive petition under the Act must first satisfy certain criteria. The requirements for filing a successive petition under the Act are well-settled and familiar. To obtain leave of court to file a successive petition,

> "a defendant must demonstrate cause for the failure to raise the claim in the initial
> petition and prejudice from that failure. [Citation.] Section 122-1(f) of the Act
> explains that a defendant shows 'cause by identifying an objective factor that
> impeded his or her ability to raise a specific claim during his or her initial post-
> conviction proceedings' and 'prejudice by demonstrating that the claim not raised
> during his or her initial post-conviction proceedings so infected the trial that the
> resulting conviction or sentence violated due process.' [Citations.] A defendant's
> motion for leave of court to file a successive postconviction petition should be

denied when the defendant's claims fail as a matter of law. [Citation.]" *People v. Lusby*, 2020 IL 124046, ¶ 27.

We review the circuit court's ruling on a motion for leave to file a successive petition *de novo*. *Id.*

¶ 12    On appeal defendant argues he established cause for his failure to bring his claims that his sentence violates his constitutional rights as applied to him in his initial postconviction petition because *Miller* and its progeny had not been decided when he filed his initial petition and his claims "are based on recent, substantive developments in the law. We agree.

¶ 13    "[O]ur supreme court has already said that '*Miller*'s new substantive rule constitutes "cause" because it was not available earlier to counsel.' [Citations.]" *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 29, citing *People v. Davis*, 2014 IL 115595, ¶ 42 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 460-61 (2002)).

¶ 14    Defendant argues he established prejudice from the failure to bring the claim because he received a *de facto* life sentence without a meaningful consideration of the mitigating effect of his youth in violation of the United States and Illinois constitutions. Defendant acknowledges that *Miller* applies only to juveniles; but, defendant argues, these "*Miller* principles can apply to young adult defendants" as well. Defendant also recognizes that decisions by our supreme court applying the "*Miller* principles" to young adults rather than juveniles have done so when the young adult is subject to *mandatory* sentencing resulting in a *de facto* life sentence and defendant's sentence was discretionary; but, he argues, if the young-adult defendant can demonstrate that he or she is sufficiently similar to a juvenile, the *Miller*'s protections should apply. To that end, defendant argues the circuit court should have granted leave to file the successive petition so that defendant "could further develop the record on his claim that he was

more like an adolescent than an adult at the time of the offense, and should have been treated as such at sentencing."

¶ 15    The State argues defendant's eighth amendment claim lacks merit because *Miller* unequivocally applies only to juveniles.  The State also argues that Illinois cases recognizing a Proportionate Penalties Clause claim by young-adult defendants who receive *de facto* life sentences have done so only for mandatory *de facto* life sentences and, therefore, those decisions do not apply to defendant because his sentence was discretionary.  The State asserts these decisions do not apply to defendant because "the rationale underlying the holdings *** is exclusively driven by the fact that a mandatory statutory scheme, that requires imposition of a life or a *de facto* life sentence, prevents consideration of the individual circumstances of the youthful offender."  The State further argues that unlike in cases where the sentence is mandatory here the trial court "was allowed discretion to consider [defendant's] mitigation, including his young age, his level of participation, and any other circumstances."

¶ 16    Moreover, regardless of the applicability of the principles at issue to defendant, the State asserts that in this case the trial court did consider defendant's age and circumstances in sentencing defendant and on appeal defendant has nonetheless failed to offer "evidence that he is in any way like a juvenile or entitled to those protections given to juveniles" or that he "suffers the same cognitive characteristics as a juvenile."  The State asserts age and "general mitigation evidence" are not enough to show an as applied constitutional violation.  The State asserts our supreme court "*suggested* that, in order to meet the threshold showing of an as applied constitutional challenge based on *Miller*, an adult defendant must do more that rely upon his or her youth coupled with the evolving science on juvenile maturity and brain development that formed the basis of the *Miller* decision."  (Emphasis added and internal quotation marks

omitted.)  Then, the State posits, the defendant must prove that application of the *Miller* factors to his or her specific circumstances establishes that the defendant's "youth and attendant circumstances reflect transient immaturity and not incorrigibility."  The State claims that in this case defendant has done neither.

¶ 17    Alternatively, the State argues the "question of whether a 50-year sentence is even a *de facto* life sentence for an adult is not entirely settled."

¶ 18    Defendant replies, in part, that it is "premature to fully determine" he is not entitled to any relief where "he has not yet had the opportunity to develop the record" that *Miller* protections should apply to him.  Defendant asserts his motion is "sufficient to survive the preliminary leave-to-file stage."  Defendant also replies that our supreme court has "already determined that *Miller* is not limited to mandatory sentences" (at least for juveniles) and the court has "in no way suggested that older teenagers would be excluded" from those holdings.

¶ 19    Although not controlling of our disposition in this case[1], and in spite of the State's argument it is "wrongly decided," we find instructive and highly persuasive this court's decision in *People v. Ruiz*, 2020 IL App (1st) 163145.  The trial court convicted the defendant in *Ruiz* for a murder that occurred when the defendant was 18-years old.  *Id.* ¶ 1.  That case, like its companion case, *People v. Johnson*, 2020 IL App (1st) 171362, came before the court on an appeal from a judgment denying the defendant leave to file a successive postconviction petition claiming that the "*Miller* principles" apply to him as a young adult.  *Ruiz*, 2020 IL App (1st)

---

[1]    *Burgoyne, LLC v. Chicago Terminal R.R. Co.*, 2020 IL App (1st) 190098, ¶ 40, ("We are, of course, not bound by the decision of a sister state court."), citing *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 82.

163145, ¶ 1. Importantly, for purposes of the appeal currently before this court, the defendant in *Ruiz* received a discretionary sentence. *Id.* ¶ 28.

¶ 20    The trial court sentenced the defendant to 40 years' imprisonment for first degree murder and a sentence of 15 years' imprisonment for aggravated discharge of a firearm for a total aggregate sentence of 55 years' imprisonment. *Id.* ¶ 18. After ongoing proceedings the defendant in *Ruiz* eventually filed a motion for leave to file a successive postconviction petition. *Id.* ¶ 20. The successive petition would claim, in pertinent part, that the defendant's "40-year sentence constituted a *de facto* life sentence in violation of the Illinois Constitution and the eighth amendment to the United States Constitution." *Id.* ¶ 20. In support of his claim, the defendant cited "both Illinois and United States Supreme Court decisions about constitutional protections available to juveniles during their sentencing proceedings." *Id.* ¶ 23. The defendant argued "the case law applicable to juveniles should also apply to him." *Id.* The "petition referenced social science articles in arguing that brain development does not conclude when a person reaches 18 years." *Id.* The defendant argued that his sentence constituted a *de facto* life sentence imposed by the trial court without considering his age. *Id.* ¶ 23.

¶ 21    On appeal, a different panel of this court reversed the trial court's judgment denying the defendant's motion for leave to file a successive postconviction petition raising the above-stated claim. *Id.* ¶ 4. The court first addressed the applicability of *Miller* to Ruiz. *Id.* ¶ 27. *Ruiz* held that our supreme court's decision in *People v. Harris*, 2018 IL 121932, ¶¶ 54-61 "foreclosed [the] eighth amendment argument." *Ruiz,* 2020 IL App (1st) 163145, ¶ 33. We, like the *Ruiz* court, "must follow *Harris*'s interpretation of the eighth amendment." *Id.* ¶ 32. In *Harris*, our supreme court held that "for sentencing purposes, the age of 18 marks the present line between juveniles and adults." *Harris*, 2018 IL 121932, ¶ 61. This line drawn by the United States

Supreme Court "was not based primarily on scientific research" (*id.* ¶ 60) like that defendant offered in this appeal. Instead, "[t]he Court drew the line at age 18 because that 'is the point where society draws the line for many purposes between childhood and adulthood.' [Citation.] New research findings do not necessarily alter that traditional line between adults and juveniles." *Id.* ¶ 60. We agree that with its decision in *Harris*, "our supreme court reaffirmed under 18 as the age cutoff for juvenile sentencing protections in the eighth amendment context." *Ruiz*, 2020 IL App (1st) 163145, ¶ 32. Defendant was undoubtedly not a juvenile when the murder in this case occurred. Accordingly, we must reject defendant's argument in this case that his sentence violates the eighth amendment to the United States Constitution.

¶ 22    We also agree, however, that our supreme court "pointedly left open the applicability of the Illinois Constitution." *Id.* ¶ 33, citing *Harris*, 2018 IL 121932, ¶ 48. In *Harris*, the court found the appellate court had "held [the] defendant's sentence violated the Illinois Constitution without a developed evidentiary record on the as-applied constitutional challenge" under the Proportionate Penalties Clause. *Harris*, 2018 IL 121932, ¶¶ 35, 40. Nonetheless, the *Harris* court declined to remand the case for an evidentiary hearing on the defendant's Proportionate Penalties Clause challenge holding that claim would be "more appropriately raised" in postconviction proceedings. *Id.* ¶ 48. Regarding the defendant's claim his sentence—a discretionary *de facto* life sentence of a young adult without consideration of "the *Miller* principles"—was unconstitutional under the Illinois Constitution, the *Ruiz* court recognized that this court has "held that the Illinois Constitution prohibits a mandatory life sentence for a young adult offender." *Ruiz*, 2020 IL App (1st) 163145, ¶ 34, citing *People v. House*, 2019 IL App (1st) 110580-B, ¶¶ 63-65, leave to appeal allowed January 2020.

¶ 23 In *Ruiz* like in the case currently before this court the State argued that even if *Miller* protections apply to young adults they did not apply to the defendant because his *de facto* life sentence was not mandatory. *Id.* ¶ 30. The *Ruiz* court could find "no support" for distinguishing the case before it on the ground the sentence was discretionary rather than mandatory. *Id.* ¶ 40. Rather, the *Ruiz* court agreed with the rationale that the juvenile sentencing principles apply to young adults as a legal matter and thus the distinction between mandatory and discretionary sentences is irrelevant. See *id*. The "legal matter" to which the *Ruiz* court referred, we believe, and which is at issue here, is the Proportionate Penalties Clause. "A proportionality challenge derives from article I, section 11, of the Illinois Constitution of 1970. Section 11, which is commonly referred to as the proportionate penalties clause, provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' Ill. Const. 1970, art. I, § 11. A defendant can raise a proportionate penalties challenge on the basis that the penalty for a particular offense is too severe under the 'cruel or degrading' standard or that the penalty is harsher than the penalty for a different offense that contains identical elements. [Citation.]" *People v. Williams*, 2015 IL 117470, ¶ 9.

> "While courts of review are generally reluctant to override the judgment of the General Assembly with respect to criminal penalties [citations], it is also true that when defining crimes and their penalties, the legislature must consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense [citation].

> * * *

We have never defined what kind of punishment constitutes cruel, degrading, or so wholly disproportioned to the offense as to shock the moral sense of the community. This is so because, as our society evolves, so too do our concepts of elemental decency and fairness which shape the moral sense of the community. [Citation] Similarly, our United States Supreme Court has stated in the context of the eighth amendment that [p]roportionality review under those evolving standards should be informed by objective factors to the maximum possible extent. [Citations.] However, this objective evidence, though of great importance, [does] not wholly determine' the controversy, for the Constitution contemplates that in the end our own judgment will be brought to bear on the question. [Citations.]" *People v. Leon Miller*, 202 Ill. 2d 328, 338-40 (2002).

¶ 24    In this context—which we find to be the particular circumstances of the offense and the individual characteristics of the youthful offender and how *youth* (not age) impacts those characteristics—the United States Supreme Court's decisions in *Miller* and other cases leading ultimately to the development of "the *Miller* principles" has provided courts with the "objective factors" that inform our judgment as to whether even a discretionary *de facto* life sentence of a young adult offender constitutes a punishment that is "cruel, degrading, or so wholly disproportioned to the offense as to shock the moral sense of the community." (Internal quotation marks and citations omitted.) *Leon Miller*, 202 Ill. 2d at 339-40. We make that determination based on the Supreme Court's articulation of the factors it considered in the development of the *Miller* principles.

¶ 25    To wit,

> "the teachings of the *Roper*/*Graham*/*Miller* trilogy require sentencing courts to provide an individualized sentencing hearing to weigh the factors for determining a juvenile's 'diminished culpability and greater prospects for reform' when, as here, the aggregate sentences result in the functional equivalent of life without parole. To do otherwise would be to ignore the reality that lengthy aggregate sentences have the effect of mandating that a juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence *** more appropriate. [Citation.] Such a lengthy sentence means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the juvenile convict], he will remain in prison for the rest of his days. [Citations.] *That* is exactly the result that *Miller* held was *unconstitutional*. [Citation.] [Citation.]" (Emphasis added and internal quotation marks omitted.) *People v. Reyes*, 2016 IL 119271, ¶ 9.

¶ 26    The "*Roper*/*Graham*/*Miller* trilogy" spoke extensively on the issues of (1) diminished culpability and (2) prospects for reform; each we find to be objective factors that inform our "proportionality review under those evolving standards" of the "moral sense of the community." *Leon Miller*, 202 Ill. 2d 328, 338-40. Here, it will suffice to note that in *Roper*, the United States Supreme Court held that

> "as the scientific and sociological studies respondent and his *amici* cite tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in *youth* more often than in adults and are more understandable among the

*young*. These qualities often result in impetuous and ill-considered actions and decisions. \*\*\*

The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. [Citation.] ('[*Y*]*outh* is more than a chronological fact. *It is a time and condition of life when a person may be most susceptible to influence and to psychological damage*'). This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment. [Citation.]

The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed. [Citation.]" (Emphases added.) *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005).

The *Roper* Court concluded that the penological justifications for punishment of retribution and deterrence are "not proportional if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, *by reason of youth and immaturity*." (Emphasis added) *Id.* at 571. "As for deterrence," the Court noted that "as the plurality observed in *Thompson*, 'the likelihood that the teenage offender has made the kind of cost-benefit analysis that attached any weight to the possibility of execution is so remote as to be virtually nonexistent." *Id.*, quoting *Thompson v. Oklahoma*, 487 U.S. 815, 837 (1988). The Court found it "worth noting that the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person." *Id.*

- 13 -

¶ 27    In *Graham*, the Court held that "none of the goals of penal sanctions that have been recognized as legitimate—retribution, deterrence, incapacitation, and rehabilitation, [citation]—provides an adequate justification" for life without parole for juvenile nonhomicide offenders. *Graham v. Florida*, 560 U.S. 48, 71 (2010).  Relevant here, the *Graham* Court found that a "lack of maturity and an underdeveloped sense of responsibility *** often result in impetuous and ill-considered actions and decisions, [citation], [and] they are less likely to take a possible punishment into consideration when making decisions."  (Internal quotation marks omitted.)  *Id.* at 72.  The Court held that in light of "diminished moral responsibility, any limited deterrent effect provided by life without parole is not enough to justify the sentence."  *Id.*  The Court also found that incapacitation did not justify the life without parole sentence because of the difficulty in differentiating between the offender whose crime reflects transient immaturity rather than irreparable corruption."  *Id.* at 72-73.  The Court expressly noted that "incorrigibility is inconsistent with *youth*."  (Emphasis added and internal quotation marks and citations omitted.)  *Id.* at 73.  See also *Graham*, 560 U.S. at 74 ("defendants serving life without parole sentences are often denied access to vocational training and other rehabilitative services that are available to other inmates.  [Citation.]  For juvenile offenders, *who are most in need of and receptive to rehabilitation*, [citation], the absence of rehabilitative opportunities or treatment makes the disproportionality of the sentence all the more evident."  (Emphasis added.)).

¶ 28    Finally, with *Miller*, the high Court, speaking specifically of juveniles, found that "diminished capacity and greater prospects for reform" make a defendant "less deserving of the most severe punishments."  *Miller v. Alabama*, 567 U.S. 460, 470-71 (2012), citing *Graham*, 560 U.S. at 68.  The Court found it is "a lack of maturity and an underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk taking" that mark the gaps

between those who are deserving of the most severe punishments and those who are not. (Internal quotation marks and citations omitted.) See *id.* at 471, citing *Roper*, 543 U.S. at 569. Finally, the *Miller* court noted that where character is not well formed a defendant's "traits are less fixed and his actions are less likely to be evidence of irretrievable depravity." *Id.* "*Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 567 U.S. at 472. The reason for that is "*youth* matters in determining the appropriateness of a lifetime of incarceration." (Emphasis added.) *Id.* at 473. We also note that in support of its conclusions, the *Miller* Court relied on "developments in psychology and brain science." *Id.* at 471. In sum, "*Graham* and *Roper* and our individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Miller*, 567 U.S. at 477.

¶ 29   As noted above, the State argues that *Ruiz* is "wrongly decided." In *Ruiz*, just as in this case,

> "the State argue[d] that Ruiz cannot establish prejudice because (i) the constitutional protections afforded to juveniles in sentencing proceedings should not extend to young adults, (ii) even if those protections apply to young adults, they do not apply to Ruiz because his *de facto* life sentence was not mandatory, and (iii) even if constitutional and juvenile sentencing protections apply to young adults given discretionary life sentences, Ruiz has failed to show eligibility for those protections or that the trial court failed to consider his youth at the original sentencing hearing." *Ruiz*, 2020 IL App (1st) 163145, ¶ 30.

The *Ruiz* court disagreed with each of those contentions, and so do we. See *id.* In *People v. Harris,* 2018 IL 121932, ¶ 45, our supreme court recognized that when the defendant is an adult and, therefore, "*Miller* does not apply directly to his circumstances" (*Harris*, 2018 IL 121932, ¶ 45), the defendant should still have the opportunity to develop the record "sufficiently to address defendant's claim that *Miller* applies to his particular circumstances (*id.*, citing *People v. Holman*, 2017 IL 120655, ¶ 30). See also *Thompson*, 2015 IL 118151, ¶ 44 ("Although we have determined that defendant cannot raise his as-applied constitutional challenge to his sentence under *Miller* for the first time on appeal from dismissal of his section 2-1401 petition, defendant is not necessarily foreclosed from renewing his as-applied challenge in the circuit court. To the contrary, the Post–Conviction Hearing Act ([citation]), is expressly designed to resolve constitutional issues, including those raised in a successive petition."). In *Holman*, our supreme court found as follows:

> "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. [Citation.] In contrast, a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant. [Citation.]
>
> > Because facial and as-applied constitutional challenges are distinct actions, it is not unreasonable to treat the two types of challenges differently ***. By definition, an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner. Therefore, it is paramount that the record be sufficiently developed

- 16 -

in terms of those facts and circumstances for purposes of appellate review.

The defendant's claim in *Thompson* illustrated that point. The defendant there maintained that the evolving science on juvenile maturity and brain development highlighted in *Miller* applied not only to juveniles but also to young adults like himself between the ages of 18 and 21. [Citation.] We rejected that claim because the record contained nothing about how that science applies to the circumstances of defendant's case, the key showing for an as-applied constitutional challenge. [Citation.] We stated the trial court was the most appropriate tribunal for such factual development." (Internal quotation marks omitted.) *Holman*, 2017 IL 120655, ¶¶ 29-30.

¶ 30 In light of the foregoing, we agree with the *Ruiz* court that there is no rational basis to distinguish between a mandatory and a discretionary *de facto* life sentence. "Our supreme court eliminated the distinction between mandatory and discretionary life sentences when juveniles raise constitutional challenges." See *People v Buffer*, 2019 IL 122327, ¶ 27 (to succeed on *Miller* claim, juvenile must show, in part, that he or she "was subject to a life sentence, mandatory or discretionary" (citing *Holman*, 2017 IL 120655, ¶ 40)). We not only agree; we further hold that is of import whether the sentencing court, either by objective statutory prohibition or subjective oversight, failed to consider the *Miller* principles before imposing the most severe punishment available in this state. See *Miller*, 567 U.S. at 476 ("Of special pertinence here, we insisted in these rulings that a sentencer have the ability to consider the mitigating qualities of youth. [Citation.] Everything we said in *Roper* and *Graham* about *that stage of life* also appears in these decisions. As we observed, *youth is more than a chronological*

*fact*. [Citation.] It is a time of immaturity, irresponsibility, impetuousness[,] and recklessness. [Citation.] It is a moment and condition of life when a person may be most susceptible to influence and to psychological damage. [Citation.] And its signature qualities are all transient. [Citation.]" (Emphases added and internal quotation marks omitted.)).

¶ 31    As the *Ruiz* court similarly held, "[t]he only aspect of Buffer's sentence that was unconstitutional concerned the trial court failing to consider his youth at the time of sentencing. [Citation.] So the trial court undoubtedly could impose an enhanced sentence on a young adult offender if it complied with the constitutional prerequisite of considering the offender's youth." *Ruiz*, 2020 IL App (1st) 163145, ¶ 42, citing *Buffer*, 2019 IL 122327, ¶ 42. In this appeal, the State argues the Supreme Court's line of cases and our supreme court's decisions extending those cases to young "adults" found that the constitutional problem was "that these adults were sentenced to *** a *mandatory* life term that prevented the sentencing court from considering whether these young adults were essentially identical to juvenile offenders." In other words, the constitutional infirmity with the as-applied constitutional challenges to lengthy sentences of young adults was not an attack on a sentence that was both the most severe penalty possible and also not "based on the individual circumstances" of the defendant, but rather was merely an attack on "the legislation mandating a life term."

¶ 32    Upon examination of the authorities, we disagree. Given our "[p]roportionality review under those evolving standards *** informed by objective factors" (*Leon Miller*, 202 Ill. 2d at 338-40) of the legitimate penological justifications of retribution, deterrence, incapacitation, and rehabilitation (*Graham*, 560 U.S. at 71), and the United States Supreme Court's determinations of the effect of "*youth* and its attendant circumstances" (see *People v. Holman*, 2017 IL 120655, ¶ 47, citing *Graham*, 560 U.S. at 73), and not just chronological age (see *Roper*, 543 U.S. at 569-

70; *Miller*, 567 U.S. at 476), on those justifications, and additionally based on our own judgment (*Leon Miller*, 202 Ill. 2d at 338-40), we disagree with the State in this case. The cardinal consideration is the effect of the defendant's individual characteristics on his or her culpability and potential for rehabilitation. As demonstrated above, these determinations are not made based on chronological age alone but on the idiosyncrasies and underdevelopment most often but not exclusively observed in young people. *Roper*, 534 U.S. at 574 ("Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach.").

¶ 33     In this case, we find it evident the trial court did not comply with the constitutional prerequisite of considering defendant's youth that will permit the court to determine the proportionality of his sentence under the Illinois constitution. *Supra*, ¶ 5. See *Leon Miller*, 202 Ill. 2d at 338-40. We also find defendant's sentence constitutes a *de facto* life sentence. *Ruiz*, 2020 IL App (1st) 163145, ¶ 45 (holding 40-year sentence to young adult constituted *de facto* life sentence) ("When it comes to young adults subject to juvenile sentencing provisions, our supreme court has not yet set a lower limit on the length of a sentence that violates *Miller* provisions. As it stands now, because the defendant in *Buffer* was a juvenile and our supreme court crafted its rule based on a statute applicable only to juveniles, *Buffer* does not foreclose our conclusion."), see also *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 43 (50-year sentence "would have been a *de facto* life sentence").

¶ 34     Defendant failed to raise this claim in his initial postconviction petition. We have already found sufficient cause for this failure. We now find defendant has demonstrated that this failure

prejudiced defendant.  Although defendant does not have a right to consideration of the *Miller* principles or eighth amendment protection defendant can raise an as-applied challenge to his sentence under the Proportionate Penalties Clause of the Illinois Constitution.  See *Harris*, 2018 IL 121932, ¶ 46 (finding exactly such a claim "premature" in those proceedings).  "The record must be developed sufficiently to address defendant's claim that *Miller* applies to his particular circumstances."  *Harris*, 2018 IL 121932, ¶ 45.  The proper forum for the development of that record is postconviction proceedings.  *Id.* ¶ 48.  Defendant's motion for leave to file points to "United States Supreme Court and recent Illinois court decisions [that] have substantially change[d] the law concerning the imposition of lengthy sentences of *** young adults."  Defendant cites numerous legal decisions from both Illinois and foreign jurisdictions addressing this issue, as well as legislative hearings, "recent scientific research in neurobiology and developmental psychology on *** young adult maturity, as well as the acknowledgment and adoption of this research by Illinois courts."  In this case, defendant has demonstrated the possibility for the record to be so developed.  See *Ruiz*, 2020 IL App (1st) 163145, ¶ 56.[2]

¶ 35     A motion for leave to file a successive postconviction petition "should be denied when the defendant's claims fail as a matter of law."  *People v. Lusby*, 2020 IL 124046, ¶ 27.  We cannot say defendant's claims in this case fail as a matter of law.  Accordingly, the trial court's

---

[2]      "Ruiz's petition, in detailed, well-cited legal argument, sets out why the protections in *Miller*, and in the Illinois cases applying it, should benefit young adults.  Ruiz cited 'recent research and articles' showing that the brain does not fully develop until the mid-20s, claiming that 'young adults as Ruiz was at 18 years old are more like adolescents than fully mature adults.'  Ruiz claimed that he too was 'largely unsettled in [his] characters and habits and this must be taken into consideration' during sentencing.  He claimed that his sentencing hearing 'clearly did not adequately focus on Ruiz['s] age of 18 and his rehabilitative potential.'  And Ruiz alleged, '[h]ad the court held a hearing specifically tailored to address each of these [*Miller*] factors, the court may well have determined a lesser sentence was appropriate.'  These facts suffice to make out a *prima facie* case that *Miller* should apply to Ruiz."  *Ruiz*, 2020 IL App (1st) 163145, ¶ 56.

judgment denying defendant's motion for leave to file a successive postconviction petition is reversed and the cause is remanded for further proceedings consistent with this order. The *Ruiz* court remanded specifically so that the petition could proceed and the defendant could "attempt to show that *Miller* applies to [him]." *Id.* ¶ 4. The *Ruiz* court clearly stated that only if the defendant could first show that *Miller* applies to him should the trial court consider a new sentencing hearing. *Id.* Therefore, we specifically instruct the trial court to conduct a preliminary hearing in which defendant is afforded the opportunity to demonstrate that the *Miller* principles apply to him individually.

¶ 36                                    CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded, with instructions.

¶ 38    Reversed and remanded, with instructions.

¶ 39    JUSTICE BURKE, dissenting.

¶ 40    I write separately because I disagree with the majority's conclusion that defendant satisfied the cause-and-prejudice test for filing a successive postconviction petition. The majority concludes that defendant satisfied the cause element because he could not have raised the argument concerning his sentence before the Supreme Court's decision in *Miller* and the cases that followed. However, *Miller* provides sentencing protections only for offenders who were juveniles at the time of their offense. Defendant was not a juvenile at the time of the offense. As a result, defendant cannot show cause because he failed to show that, as a young adult, he was entitled to the sentencing protections afforded to a juvenile. The cases cited by the majority expanding *Miller* protections under the Illinois proportionate penalties clause to young adults are outliers with either extraordinary factual circumstances or flawed reasoning and they should not be followed in this

case. As such, I would find that defendant is not entitled to seek relief under *Miller* and its progeny and I would affirm the circuit court's denial of leave to file. Accordingly, for the reasons stated below, I must respectfully dissent.

¶ 41                                    I. Evidence at Trial

¶ 42     The majority adequately sets forth the factual record; however, I feel it is important to highlight some of the evidence concerning defendant's involvement in shooting. Although defendant was convicted under a theory of accountability, he was an active participant in the crime. Defendant helped lure the victim to the scene of the murder by setting up a drug deal. Defendant planned to steal the drugs from the victim and beat him with a metal pipe. Defendant was undeterred when he learned that his co-defendant was planning to bring a gun and shoot the victim, choosing to continue to participate in the scheme. Defendant then acted as a lookout while his co-defendant shot the victim. After the shooting, defendant drove the victim's car with the victim's body inside to an alley where he and his co-defendant disposed of the body. Defendant then destroyed evidence in the victim's vehicle, retrieved the drugs from the vehicle, and sold the murder weapon to a friend in an effort to hide it from police. The whole endeavor, from setting up the drug deal, planning the robbery and shooting, and hiding the evidence, took place over the course of three days, suggesting that this was not some spur of the moment one-time bad decision by defendant.

¶ 43     Defendant also filed an initial postconviction petition in 2008 alleging, *inter alia*, that the trial court failed to adequately consider, among other things, his age at the time of the offense. The circuit court summarily dismissed his petition and this court affirmed that dismissal on appeal.

¶ 44                                    II. ANALYSIS

¶ 45 As the majority sets forth, in order for defendant to file this successive petition under the Act, he must first satisfy the cause and prejudice test. Defendant maintains that he satisfied the cause element of the cause-and-prejudice test because he could not have filed his petition before the Supreme Court announced the new juvenile sentencing rules in *Miller*, which some panels of this court have extended to young adults. See, *e.g.*, *People v. Ruiz*, 2020 IL App (1st) 163145; *People v. Johnson*, 2020 IL App (1st) 171362, *People v. Minniefield*, 2020 IL App (1st) 170541; but see, *e.g.*, *People v. Moore*, 2020 IL App (4th) 190528, ¶¶ 38-41; *People v. Green*, 2020 IL App (5th) 170462 ¶¶ 37-41; *People v. White*, 2020 IL App (5th) 170345, ¶¶ 27-31; *People v. Handy*, 2019 IL App (1st) 170213, ¶ 40. Defendant asserts that he established prejudice because the court could not have considered the *Miller* factors or the emerging science concerning brain development in young adults in determining his sentence, or in ruling on his initial postconviction petition.

¶ 46 Defendant asserts that his *de facto* life sentence violates the *eighth amendment and the proportionate penalties clause where the sentencing court failed to consider his youth and its attendant characteristics before sentencing him to a 50-year term of imprisonment. The majority correctly concludes, citing People v. Harris, 2018 IL 121932, that 18 years of age is the cutoff for juvenile sentencing protections under Miller in the context of the eighth amendment. The majority then determines, however, that defendant may be afforded Miller protections under the proportionate penalties clause of the Illinois Constitution pending his ability to show at an evidentiary hearing that he is entitled to such protections as a young adult. The majority then remands this case for such a hearing. The majority essentially concludes that the proportionate penalties clause provides greater Miller-based sentencing protections for young adults than the eighth amendment.* This conclusion stands in contrast to the numerous cases from other authors

and divisions of this court drawing the exact opposite conclusion. See, *e.g.*, *Moore*, 2020 IL App (4th) 190528, ¶¶ 38-41; *Green*, 2020 IL App (5th) 170462 ¶¶ 37-41; *White*, 2020 IL App (5th) 170345, ¶¶ 27-31; *Handy*, 2019 IL App (1st) 170213, ¶ 40.

¶ 47      In addressing defendant's claim, the majority relies primarily on *People v. Ruiz*, 2020 IL App (1st) 163145 and follows the analysis and determination of that ruling. I find, however, that *Ruiz* was wrongly decided and should not be followed. I find the *Ruiz* decision problematic for a number of reasons. For one, even if the offender in *Ruiz* were a juvenile, his 40-year sentence would not have been a *de facto* life sentence and he would not have been entitled to *Miller*-based protections. *Ruiz* was published after the supreme court's decision in *Buffer* where the supreme court determined that a *de facto* life sentence for a juvenile is a sentence of more than 40 years. *People v. Buffer*, 2019 IL 122327, ¶ 40. That means, that "a prison sentence of *40 years or less* imposed on a juvenile offender provides " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " (Emphasis added.) *Id.* ¶ 41. Thus, under *Buffer*, Ruiz's sentence of exactly 40 years would not be a *de facto* life sentence. Rather than follow this binding precedent, the *Ruiz* court established its own "age of release" standard in determining that Ruiz's 40-year sentence amounted to a *de facto* life sentence. *Ruiz*, 2020 IL App (1st) 163145, ¶¶ 43-45. Under this standard, the *Ruiz* court seemed to suggest that young adult offenders may be afforded *even greater* sentencing protections than juvenile offenders, where sentences of even less than 40 years could represent *de facto* life sentences for young adults. This standard simply finds no support in the prevailing precedent.[3]

---

[3]I observe that Justice Anne Burke, in her specially concurring opinion in *Buffer*, did discuss a standard where the determination of whether a minor was sentenced to a *de facto* life sentence would be based on the minor's age at the time of release from prison. *Buffer*, 2019 IL 122327, ¶¶ 58, 67 (Burke, J., specially concurring). However, in her special concurrence, Justice Burke repeatedly referred to "incarcerated minors." *Id.* ¶¶ 65, 67. There is no suggestion

¶ 48    More importantly, *Ruiz* seems to conflict with the standard cause and prejudice precedent. In *Ruiz*, as here, the court found that defendant had established cause to file his successive petition because he could not have raised claims regarding *Miller*-based sentencing protections before *Miller* was decided. *Id.* ¶ 29. This is true for juvenile offenders because juveniles who receive life sentences or *de facto* life sentences are automatically entitled to *Miller* protections. See *People v. Davis*, 2014 IL 115595, ¶ 42. Our supreme court has suggested, however, that young adult offenders must satisfy a second requirement before they may be entitled to the same protections: They must present some evidence that their specific brain development was delayed. *Harris*, 2018 IL 121932, ¶ 46. I believe this standard does not require a young adult petitioner to fully develop the record when seeking leave to file a successive petition, but nonetheless requires the young adult petitioner to put forth *some* documentation or other evidence showing that their *specific* development was delayed. See, *e.g.*, *People v. Smith*, 2014 IL 115946, ¶ 35 (documentation required to allow circuit court to determine whether the cause-and-prejudice test met).

¶ 49    Nonetheless, *Ruiz*, and the majority in this case, ordered remand to give the young adult defendant the opportunity to develop the record to support his claim. However, this presupposes the existence of some factual basis. As noted, I do not believe the cause-and-prejudice standard requires a young adult defendant to fully develop the factual record in order to obtain leave to file the petition, but I would find that there must be some threshold amount of evidence that the petitioner could then further develop at an evidentiary hearing. In this case, and in *Ruiz*, there was simply no suggestion that such evidence existed and the defendants merely relied on general

---

that she intended this standard to be applied in the paradoxical manner employed by the *Ruiz* court to find that sentences of less than 40 years are *de facto* life sentences for young adult offenders when those same sentences may not be *de facto* life sentences for juvenile offenders.

information about brain development in young adults. In his petition in this case, defendant merely repeated some of the details contained in his PSI, including information concerning his upbringing, drug use, and educational background, but did not suggest that his "mental age" at the time of the offense was less than his chronological age. See *People v. Holman*, 2017 IL 120655, ¶ 44; see also, *People v. Savage*, 2020 IL App (1st) 173135, ¶ 78. Although the minimal amount of evidence defendant has presented in this case may have been sufficient to survive first stage dismissal for an initial postconviction petition, the cause and prejudice standard for successive petitions is a "more exacting" standard. *People v. Edwards*, 2012 IL App (1st) 091651, ¶¶ 21-22 (citing *People v. Conick*, 232 Ill. 2d 132, 142 (2008)). Accordingly, I would find that defendant has not satisfied the "cause" prong of the cause and prejudice standard for filing successive postconviction petitions and I would affirm the judgment of the circuit court on that basis.